Carolyn L. Jordan, as executrix of the estate of her husband, James I. Jordan, and as beneficiary of a group accidental death *Page 700 
insurance policy that James had with Reliable Life Insurance Company ("Reliable") through his employer, sued Reliable in the United States District Court for the Northern District of Alabama for benefits under her husband's policy after he died in an airplane crash. Pursuant to a provision in Jordan's policy that limited coverage to passengers, as opposed to pilots or members of the crew, Reliable denied coverage, because it determined that James was not riding in the plane as a passenger. Although James had piloted the aircraft during most of the flight in question, Jack Page, a professional flight instructor, who was giving James a refresher course in instruments-only flying, had assumed control of the plane immediately prior to impact. Page survived the crash and estimated that 30 seconds elapsed between his taking the throttle from James and the plane's crashing.
The federal district court awarded Carolyn Jordan the policy proceeds and interest at the "legal rate" prescribed by Ala. Code 1975, § 8-8-1, from the date she presented her claim to Reliable. Jordan v. Reliable Life Insurance Co.,716 F. Supp. 582 (N.D.Ala. 1989). Reliable appealed the damages award to the United States Court of Appeals for the Eleventh Circuit, and Jordan cross-appealed the ruling on the rate of interest awarded. Jordan claims she is entitled to interest at the rate specified in Ala. Code 1975, § 27-1-17(b), instead of the legal interest rate. The Court of Appeals affirmed the award of damages, but certified to this Court the following question:[1]
 "Does the rate of interest specified by Alabama Code [1975,] § 27-1-17[,] apply when an insurer denies a health or accident claim based on its interpretation of case law, and such interpretation, although ultimately rejected by the court, is a defensible one?"
Section 27-1-17 provides:
 "(a) All persons, firms, corporations or associations issuing health and accident insurance policies within this state shall consider claims made thereunder and, if found to be valid and proper, shall pay such claims within 45 days after the receipt of proof of loss under such policies. Benefits due under the policies and claims are to be considered overdue if not paid within 45 days after the insurer receives reasonable proof of the fact and amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof shall be considered overdue if not paid within 45 days after such proof is received by the insurer. Any part or all of the remainder of the claim that is later supported by reasonable proof shall be considered overdue if not paid within 45 days after such proof is received by the insurer. For the purposes of calculating the extent to which any benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail to the last known address of the claimant or beneficiary in a properly addressed, postpaid, envelope, or, if not so posted, on the date of delivery.
 "(b) If the claim is not denied for valid and proper reasons by the end of said 45 day period, the insurer must pay the insured one and one-half percent per month on the amount of said claim until it is finally settled or adjudicated.
 "(c) In the event that the insurer fails to pay such benefits when due, the person entitled to such benefits may bring an action to recover them."
Reliable argues that the one and one-half percent per month interest rate provided for in § 27-1-17(b) is inapplicable when in good faith an insurer denies a claim within 45 days after receipt of proof of loss for reasons the insurer regards as legitimate at the time the claim is denied. Conversely, Jordan contends that the statute requires an insurance company to pay one and one-half percent per month interest on the amount of benefits claimed in all cases in which it is ultimately required to pay, regardless of whether the company *Page 701 
had a defensible reason for denying the claim. We conclude that the construction argued for by Jordan is the more sound interpretation of § 27-1-17. An insured who successfully litigates is statutorily entitled to compensation for the insurer's detention of the policy proceeds. Although we do not dispute the statutory language allowing an insurer to deny a claim "for valid and proper" reasons, the insurer does so at the risk that the judiciary will subsequently determine that those reasons were, in fact, not "valid and proper." Should there be such a judicial determination, § 27-1-17 places the burden on the insurer and provides the insured with the specified one and one-half percent per month rate of interest to compensate for the insurer's withholding of the policy proceeds. The six percent legal interest rate provided in §8-8-1 does not compensate the insured to the extent the legislature intended under the present circumstances. Moreover, application of the six percent rate could provide an incentive for insurers to deny claims because they can earn more than six percent from investing the policy proceeds to which the insured may ultimately be entitled during the period the claim is being litigated.
The legislature has not granted insurance companies the power to make conclusive decisions with regard to whether a claim is valid and proper. A grant of such a power would surely be contrary to what we understand to be the statute's policy of improving the insured's position relative to that of the insurer. The insurer must make its decision with the knowledge that the judiciary may subsequently review the decision. In fact, the statute clearly contemplates the possibility of the judiciary's presence in the resolution of claims. Subsection (b) of § 27-1-17 concludes with the words "until [the claim] is finally settled or adjudicated." A court is certainly not bound by an insurer's initial determination that a claim is invalid and improper.
A primary purpose underlying § 27-1-17 is to encourage insurers to act on claims within the 45-day period provided in the statute, and construing the statute so as to require the insurer to compensate the insured at the interest rate specified in § 27-1-17(b) furthers this purpose. Such a construction encourages insurers not only to act on claims within the 45-day period, but also to take measures that result in a high probability that the insurer's initial determination is correct. Obviously, if a claim is denied for valid and proper reasons, as later determined by the court, the insurer will not be liable for the payment of the rate of interest specified in § 27-1-17. Encouraging insurers to make proper decisions as to validity and propriety is surely one of the primary purposes of insurance regulation, and this Court should adhere to this purpose in its construction of insurance statutes.
In his treatise on statutory construction, Professor Singer writes:
 "When a statute is being construed the primary consideration is to ascertain and give effect to the legislative intent. In effecting that objective, the courts are first bound to ascertain the intent from a literal reading of the words and the language of the statute itself. . . . [A]ll statutes in an insurance code are intended to be part of a uniform system of regulation and should be considered in pari materia."
N. Singer, Sutherland Statutory Construction, § 70.05, at 505 (4th ed. 1986). There appears to be no legislative intent for the provisions of § 27-1-17 to be affected by an insurer's "defensible" interpretation of case law. Moreover, in DruidCity Hospital Board v. Epperson, 378 So.2d 696 (Ala. 1979), this Court stated: "Where one interpretation of a statute would defeat its purpose that interpretation will be rejected if any other reasonable interpretation can be given it." Id. at 699. Reliable's interpretation of the statute would defeat the statute's purpose to compensate the insured for the period during which the policy benefits were not available. The reference to "valid and proper" in § 27-1-17(b) qualifies the 45-day requirement. The phrase does not qualify the one and one-half percent per month interest rate, which we believe the legislature intended to be applicable to claims *Page 702 
that are ultimately found to have been denied for invalid and improper reasons.
The title to the act from which § 27-1-17 originated indicates to some extent that the legislature did not intend to qualify the operation of § 27-1-17 in the manner suggested by Reliable. Clearly, the title of an act may serve as an aid to statutory interpretation. Hamrick v. Thompson, 276 Ala. 605,165 So.2d 386 (1964). The title reads in part: "and to provide that the insurance company shall pay interest on the unpaid amount of any such claims after a certain period of time from receipt of proof of loss." Act 81-371, Alabama Acts 1981 (emphasis added). This language indicates that the statutory rate of interest provided for in § 27-1-17(b) applies to all
claims that are "finally settled or adjudicated" in the insured's favor.
Finally, we do not believe that this interpretation of §27-1-17 would unfairly penalize insurers. Given the choice between 1) requiring insurers to bear the risk of a later judicial determination of invalidity and impropriety and 2) requiring those insured to forgo the benefits of policy proceeds they are rightfully entitled to, the former is more consistent with the overall intent of the legislature in regulating the insurance industry.
Therefore, we answer the question certified to this Court in the affirmative: the rate of interest specified in § 27-1-17
does apply when an insurer denies a health or accident claim based on a defensible interpretation of case law that is ultimately rejected by the court.
QUESTION ANSWERED.
SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, ALMON and HOUSTON, JJ., concur specially.
[1] For a detailed discussion and analysis of the insurance policy provisions involved, see Jordan v. National Accident InsuranceUnderwriters, Inc., 922 F.2d 732 (11th Cir. 1991).